**UNITED STATES of America, Appellee,**

v.

**Jack Casebeer WOOD, III, Appellant.**

**No. 76–1493.**

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 15, 1976.

Decided Dec. 6, 1976.
Certiorari Denied Feb. 22, 1977.
See 97 S.Ct. 1118.

Earl P. Gray, St. Paul, Minn., for appellant.

Richard E. Vosepka, Asst. U. S. Atty., Minneapolis, Minn., for appellee; Robert G. Renner and Vosepka, Asst. U. S. Atty., Minneapolis, Minn., on brief.

Before VAN OOSTERHOUT, Senior Circuit Judge, and HEANEY and BRIGHT, Circuit Judges.

HEANEY, Circuit Judge.

Jack Casebeer Wood, III, appeals from his conviction of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a). Wood claims that his warrantless arrest and the warrantless search of the car he was driving were made without probable cause and, therefore, inculpatory statements he made while in custody, and cocaine seized from the trunk of the car, should have been suppressed. He also claims that certain inculpatory statements should have been suppressed because they were obtained during an interrogation conducted after his repeated requests for counsel were denied. We affirm.

At approximately 1:40 P.M. on November 14, 1975, Agent Marcus Kryger of the Federal Drug Enforcement Administration was stationed in the Holiday Village North parking lot near the junction of University Avenue N.E. and Interstate 694 in Fridley, Minnesota, with instructions to observe an anticipated drug transaction. He had been informed by a state agent that a drug transaction involving Bruce Bane, a suspected narcotics dealer, was anticipated at the point of his surveillance. He had been further informed that the transaction would involve a white Pontiac Grand Prix and a blue Chevrolet Camaro which was registered to the girlfirend of Bruce Bane. Both vehicles were reported to Kryger as having been seen together in the vicinity of a suspected drug transaction twenty to thirty minutes earlier.

Agent Kryger observed a white Pontiac Grand Prix and a blue Chevrolet Camaro exiting Interstate 694 at University Avenue N.E. from approximately one hundred yards away. The blue Camaro was traveling immediately behind the white Pontiac. Using binoculars, Agent Kryger recognized the driver of the Pontiac to be Bruce Bane. He did not recognize the driver of the Camaro, but he was able to read the vehicle's license number which he recognized to be that registered to Bane's girlfriend.

After exiting the freeway, the Pontiac entered the Holiday Village North parking lot, then turned back onto University Avenue, traveled north for a few blocks, and entered the parking lot of a drive-in restaurant. At that point, Agent Kryger attempted to stop the vehicle and a high-speed chase ensued. During the chase, Bane was observed strewing white powder out of the window of the vehicle. After the Pontiac was stopped, Bane was searched and some white powder found on his person was identified by a field test to be cocaine. Agent Kryger then issued a radio alert ordering the stop of the blue Camaro which had turned north off the freeway and continued out of his sight.

The Camaro was stopped shortly thereafter by a local police officer. Wood, the driver of the vehicle, was ordered out of the car. Other officers arrived, including Agent Shanley of the Minnesota Bureau of Criminal Apprehension who was involved in the investigation of Bruce Bane. The car was searched and cocaine, wrapped in a magazine, was found in the trunk. Agent Shanley advised Wood of his *Miranda* rights and Wood acknowledged that he understood them.

Wood was transported to the Federal Building in Agent Shanley's squad car. During the ride, Agent Shanley asked Wood if the cocaine found in the trunk of the Camaro belonged to him. Wood replied that he wanted to talk to his attorney, and questioning ceased. Wood, however, subsequently volunteered several statements of an incriminating nature.

Upon arrival at the Federal Building, Wood was taken to the D.E.A. booking room and turned over to Agent John Boulger. Wood testified at trial that he asked to see his attorney upon his arrival in the booking room and that this request was denied. Agent Boulger testified that Wood made no such request. During the booking procedure which followed, Wood proceeded to discuss the drug transaction that had been planned and his involvement in it. Agent Boulger testified that although he "may have asked questions to fill in any holes" in Wood's story while he was relating it, Wood had expressed a desire to cooperate with the government of his own accord and had initiated the conversation during which the statements were made. When asked by Agent Boulger to sign a statement confirming what he had said, Wood refused and asked to speak to his attorney. The booking procedure was completed without further discussion.

### I

■ Wood contends that, at the time Agent Kryger's radio alert was issued, the agents did not possess sufficient information linking him or the automobile he was driving to the Bane transaction to establish probable cause for his arrest or for the search of the Camaro.[1] Consequently, Wood argues that the cocaine seized from the trunk of the car, and all inculpatory statements he made after his arrest, should have been suppressed. We disagree.

■ Probable cause to arrest depends "upon whether, at the moment the arrest was made, * * * the facts and circumstances within * * * [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the * * * [suspect] had committed or was committing an offense." *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). *Accord, Kelley v. Swenson,* 510 F.2d 264, 266 (8th Cir. 1975); *United States v. Peep,* 490 F.2d 903, 906 (8th Cir. 1974). In assessing probable cause, we must evaluate the action of the arresting officers in light of the totality of the circumstances. *United States v. Regan,* 525 F.2d 1151, 1155 (8th Cir. 1975); *United States v. Peep, supra* at 907.

■ After considering all the facts and circumstances, we believe there was probable cause for Wood's arrest and, correspondingly, for the search of the blue Camaro for contraband. *See Chambers v. Maroney,* 399 U.S. 42, 47–48, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). State agents had been informed that drug transactions would occur in the parking lots at Schillers and at Holiday Village North early in the afternoon of November 14. Additionally, it was anticipated that Bruce Bane would be a participant in the drug transactions, and that a white Pontiac and a blue Camaro would be used by parties involved in the transactions. While the state agents did not testify as to either the reliability of the informant or the basis of the informant's knowledge,[2] the tip certainly formed a sufficient basis for the two locations to be placed under surveillance. Several of the essential details of the tip were corroborated [3] when two vehicles, one driven by Bane and both matching the descriptions given, arrived near the site of the second anticipated transaction only minutes after they had been observed in the vicinity of the first anticipated transaction.

Additionally, from these facts, the agents could reasonably conclude that the drivers

---

1. Wood agrees that, given probable cause to believe that the Camaro contained contraband, the trunk of the car could have been searched either at the scene where the automobile was stopped or later at the station house. *Texas v. White,* 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975); *Chambers v. Maroney,* 399 U.S. 42, 51–52, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

2. *See Whiteley v. Warden,* 401 U.S. 560, 568, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); *United*

*States v. Wixom,* 460 F.2d 206, 208 (8th Cir. 1972). Had the arrest or search been based on the tip alone, we would agree that its validity could not be sustained.

3. *See Spinelli v. United States,* 393 U.S. 410, 415–416, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *Brewer v. Wolff,* 529 F.2d 787, 791 (8th Cir. 1976).

of the two vehicles were acting in concert. *See Cochran v. United States*, 389 F.2d 326, 327 (10th Cir.), *cert. denied*, 391 U.S. 913, 88 S.Ct. 1808, 20 L.Ed.2d 653, *rehearing denied*, 393 U.S. 899, 89 S.Ct. 70, 21 L.Ed.2d 187 (1968); *Sanchez v. United States*, 311 F.2d 327, 329–330 (9th Cir. 1962), *cert. denied*, 373 U.S. 949, 83 S.Ct. 1678, 10 L.Ed.2d 704 (1963).

 At this point, Agent Kryger, who had been assigned to observe this location, had probable cause to make an investigatory stop of either or both of the cars. When he attempted to stop the car driven by Bane, a high-speed chase ensued, and Bane was observed throwing a white powder out of the window of the car. When field tests revealed that the white powder was cocaine, probable cause clearly existed to arrest the driver of the Camaro and to search the car. *See Spinelli v. United States*, 393 U.S. 410, 417–418, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Wangrow v. United States*, 399 F.2d 106, 113 (8th Cir.), *cert. denied*, 393 U.S. 933, 89 S.Ct. 292, 21 L.Ed.2d 270 (1968). *Cf. United States v. Dalli*, 424 F.2d 45, 48 (2nd Cir.), *cert. denied*, 400 U.S. 821, 91 S.Ct. 39, 27 L.Ed.2d 49 (1970).

## II

Wood, citing *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), next contends that the statements he made in the D.E.A. booking room should have been suppressed because they were elicited during questioning conducted after his repeated requests for counsel were denied, in violation of his Fifth and Sixth Amendment rights. The government responds that Wood's statements were voluntary and, thus, fall outside the *Miranda* rule.

 Voluntary statements of any kind, not made in response to police interrogation, are not barred by the Fifth Amendment and their admissibility is unaffected by *Miranda* and its progeny. *Miranda v. Arizona, supra* at 478, 86 S.Ct. 1602; *United States v. Cook*, 530 F.2d 145, 152–153 (7th Cir.), *cert. denied*, 426 U.S. 909, 96 S.Ct. 2234, 48 L.Ed.2d 835 (1976); *United States v. Martin*, 511 F.2d 148, 150–151 (8th Cir.

1975); *United States v. Menichino*, 497 F.2d 935, 939–941 (5th Cir. 1974); *Caton v. United States*, 407 F.2d 367, 374 (8th Cir.), *cert. denied*, 395 U.S. 984, 89 S.Ct. 2149, 23 L.Ed.2d 773 (1969). The trial court, after a hearing on Wood's motion to suppress, found that Wood's inculpatory statements were voluntarily made and were not the result of questioning or coercion. Our review of the record convinces us that those findings are supported by substantial evidence and that no clear error appears. *See Mullins v. United States*, 487 F.2d 581, 589 (8th Cir. 1973); *Gullett v. United States*, 387 F.2d 307, 309 (8th Cir.), *cert. denied*, 390 US. 1044, 88 S.Ct. 1645, 20 L.Ed.2d 307 (1967). Accordingly, we find no merit in Wood's contention that his statements should have been suppressed.

Judgment affirmed.